# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Craig Carl Busse, Petitioner.

Appellate Case No. 2021-000076

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Newberry County
Donald B. Hocker, Circuit Court Judge

---

Opinion No. 28138
Heard April 28, 2022 – Filed March 8, 2023

---

**AFFIRMED**

---

Vicki D. Koutsogiannis and James Ross Snell Jr., Law Office of James R. Snell Jr., LLC, of Lexington, for Petitioner.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General William M. Blitch Jr., and Senior Assistant Deputy Attorney General John Benjamin Aplin, of Columbia; David Matthew Stumbo, of Greenwood, all for Respondent.

---

**JUSTICE FEW:** Craig Carl Busse appealed his conviction for second-degree criminal sexual conduct with a minor, claiming the deputy solicitor improperly vouched for the victim's credibility in a statement he made during closing argument. The court of appeals affirmed. We find the deputy solicitor's statement was technically in error and the trial court should have sustained Busse's objection. However, the statement did not amount to vouching. We find no reversible error and affirm.

## I.      Facts and Procedural History

Busse was the victim's stepfather. The victim's mother—Busse's wife—found text messages on the victim's cell phone in which the victim told her boyfriend that Busse sexually assaulted her. The victim was fourteen years old. When the mother confronted the victim, she denied the sexual assaults occurred. Eighteen months later, the victim told a friend at her school Busse had been sexually assaulting her. The friend reported it to the friend's mother, who then reported it to officials at their school. As the law requires, the school officials notified law enforcement authorities of the reported abuse. The Department of Social Services took the victim into protective custody. In a forensic interview a few weeks later, the victim told the interviewer Busse sexually assaulted her "in the span of about two years."

At trial, the victim testified Busse began touching her when she was in the eighth grade. Initially, he touched her breasts and vagina with his hands on top of her clothes. He soon began reaching under her clothes to touch her breasts and vagina. The sexual assaults progressed to the point he was inserting his fingers inside her vagina, touching her vagina with his mouth and tongue, and forcing her to perform oral sex on him. She testified Busse ejaculated in her mouth once.

The centerpiece of this appeal is the victim's testimony that Busse attempted to have intercourse with her but was unable to have an erection. An assistant solicitor led the victim through the following dialogue:

> Solicitor:     Did [Busse] have any issues achieving an erection?
>
> Victim:     Yes.
>
> Solicitor:     Did he talk about that with you?
>
> Victim:     Yes.

| | |
|---|---|
| Solicitor: | So it wasn't just his stomach getting in the way? |
| Victim: | He would, he, I don't know what you could call it but he had trouble getting an erection. |
| Solicitor: | And you saw this first hand? |
| Victim: | Yes. |
| Solicitor: | And did he also verbalize it? |
| Victim: | Yes. |

. . .

| | |
|---|---|
| Solicitor: | So this was the only way you could have known about [Busse's] issues with achieving an erection? |
| Victim: | Yes. |
| Solicitor: | So multiple times [Busse] attempted to have sex with you, is [that] what you're testifying to? |
| Victim: | Yes. |

When Busse "verbalize[d] it," the victim testified, he told her "it had to do with health" but did not explain. The victim's mother verified Busse did have erectile dysfunction, but she testified she never discussed her sex life with or around the victim. Both the mother and the victim testified the victim did not overhear Busse or anyone else talking about his erectile dysfunction and there was no way she could have known about it except through Busse's unsuccessful attempts to have intercourse with her.

During closing argument, the deputy solicitor stressed the importance of this testimony. He told the jury, "But you know, he didn't have intercourse with her. You know why? He can't have intercourse with her. He's impotent, cannot sustain

an erection. What I want you to ask yourselves and what was compelling to me, how does she know that." Busse objected "as to anything about what [the deputy solicitor] believes and if it's compelling to him," but the trial court overruled the objection. The deputy solicitor continued with his closing argument stating, "I'm going to repeat what was compelling to me and should be to you, was how did she know that."

The jury convicted Busse of second-degree criminal sexual conduct with a minor, and the trial court sentenced him to fifteen years in prison. Busse appealed on several grounds and the court of appeals affirmed in an unpublished opinion. *State v. Busse*, Op. No. 2020-UP-307 (S.C. Ct. App. filed Nov. 12, 2020). We granted Busse's petition for a writ of certiorari to address whether the deputy solicitor's statement "and what was compelling to me" in closing argument was improper vouching.

## II.    Analysis

Busse's argument on appeal is not simply that the statement was out of line and the trial court should have sustained his objection. He argues, rather, the statement amounts to vouching and, thus, the statement "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See State v. Reese*, 370 S.C. 31, 38, 633 S.E.2d 898, 901-02 (2006) (when challenging a conviction on direct appeal on the basis of an improper closing argument, "it must be shown that the argument so infected the trial with unfairness as to make the resulting conviction a denial of due process"), *overruled on other grounds by State v. Belcher*, 385 S.C. 597, 612 n.10, 685 S.E.2d 802, 810 n.10 (2009).

All lawyers have a responsibility to advocate zealously on behalf of their client. This responsibility is not diminished when the lawyer is the prosecutor in a criminal trial. We expect solicitors to "prosecute with earnestness and vigor" on behalf of the State. *Fortune v. State*, 428 S.C. 545, 552, 837 S.E.2d 37, 41 (2019) (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 1314, 1321 (1935)). A prosecutor arguing forcefully during closing argument that the jury should believe a particular witness is well within her proper role as a zealous advocate, so long as the argument is based on evidence admitted during trial.

Zealous advocacy crosses the line and becomes improper vouching, however, when the prosecutor indicates to the jury—even implicitly—that her argument as to the credibility of a witness is based on anything other than the evidence admitted. The verb "vouch"—when speaking "[o]f a lawyer before a jury"—means "to comment

favorably on the credibility of one or more witnesses based on the lawyer's personal knowledge." *Vouch*, BLACK'S LAW DICTIONARY (11th ed. 2019). The legal concept of "vouching" prohibits a prosecutor from giving the jury any indication she knows something about the credibility of a witness that the jury does not know, or that is based on an event or proceeding outside the presence of the jury. *See State v. Kelly*, 343 S.C. 350, 368, 540 S.E.2d 851, 860 (2001) ("Vouching constitutes an assurance by the prosecuting attorney of the credibility of a Government witness through personal knowledge or by other information outside of the testimony before the jury." (quoting *United States v. Walker*, 155 F.3d 180, 184 (3d Cir. 1998))), *rev'd and remanded on other grounds*, *Kelly v. South Carolina*, 534 U.S. 246, 122 S. Ct. 726, 151 L. Ed. 2d 670 (2002); *State v. Shuler*, 344 S.C. 604, 630, 545 S.E.2d 805, 818 (2001) ("Improper vouching occurs when the prosecution . . . mak[es] explicit personal assurances of a witness' veracity, or where a prosecutor implicitly vouches for a witness' veracity by indicating information not presented to the jury supports the testimony," or "when a prosecutor implies he has facts that are not before the jury"); 344 S.C. at 629, 545 S.E.2d at 818 (finding no vouching when the solicitor did not "imply special knowledge" of the witness's credibility).

We begin our analysis of whether the deputy solicitor's statement in this case amounts to vouching by stressing that the evidence—that the victim knew of Busse's erectile dysfunction and the only way she could have known of it was through observations she made during Busse's sexual abuse of her—is clearly admissible. The State was clearly entitled to drive home to the jury during closing argument the importance of this evidence. In particular, it was the deputy solicitor's responsibility to argue to the jury that this evidence was important to the jury's assessment of the victim's credibility.

To evaluate whether the deputy solicitor—in the course of making this valid point—crossed the line into vouching, we break the statement down into three elements. First, the deputy solicitor used the word "compelling." Second, he said compelling "to me." Third, he spoke in the past tense of what "was" compelling.

We doubt the word "compelling" would have caught anyone's attention were it not for our decisions in two cases concerning expert witnesses: *State v. Jennings*, 394 S.C. 473, 716 S.E.2d 91 (2011), and *State v. Kromah*, 401 S.C. 340, 737 S.E.2d 490 (2013). In *Jennings*, we reversed the defendant's conviction for lewd act upon a child[1] on the ground a forensic interviewer wrote in reports introduced into evidence,

---

[1] At the time of the crimes alleged in *Jennings*, "lewd act upon a child" was codified at section 16-15-140 of the South Carolina Code (2003) (repealed 2012). The same

"the children provided a 'compelling disclosure of abuse.'"  394 S.C. at 479, 716 S.E.2d at 94.  We stated, "For an expert to comment on the veracity of a child's accusations of sexual abuse is improper," and we found, "There is no other way to interpret the language used in the reports other than to mean the forensic interviewer believed the children were being truthful."  394 S.C. at 480, 716 S.E.2d at 94.  The witness's use of the word "compelling" in that context was improper because no witness is permitted to comment on the credibility of another witness. *Id.*; *see also Kromah*, 401 S.C. at 359, 737 S.E.2d at 500 (holding an expert "should not have been allowed to testify about a compelling finding of child abuse as that was the equivalent of . . . stating the Child was telling the truth").

In this case, on the other hand, the use of the word compelling was not improper. Unlike an expert witness on direct examination, a prosecutor is expected to comment on the credibility of the witnesses when making a closing argument.  Far from improper, as previously explained, doing so is one of the fundamental responsibilities of a lawyer.  The deputy solicitor was arguing the importance of facts in evidence to *the jury's* determination of the victim's credibility.  Thus, *Jennings* and *Kromah* and their disapproval of the use of the word "compelling" are not applicable to this case.  We find nothing improper in the deputy solicitor's use of the word "compelling" as part of his effort to stress the importance of a piece of evidence and thus convince the jury to believe the victim's testimony.

Turning to the phrase "to me," we recently addressed the State's use of the first person in *State v. Reyes*, 432 S.C. 394, 853 S.E.2d 334 (2020).  We explained the State's use of the first person when questioning a witness in that case "could have given the jury the perception [the solicitor] believed the witness was telling the truth."  432 S.C. at 405, 853 S.E.2d at 340.  We relied on *Kelly*, in which we stated "the assistant solicitor improperly phrased his questions in the first person."  343 S.C. at 369 n.12, 540 S.E.2d at 861 n.12.  As to the use of the phrase "to me"—unlike the use of the word "compelling"—there is no meaningful difference between questioning a witness and making a closing argument.  In either instance, the State should not inject the personal views or opinions of its representative as to the credibility of a witness into the jury's thought process.  In *Kelly*, we stated the State's use of the first person was "perhaps not technically vouching," but it raised the second of two concerns associated with vouching.  343 S.C. at 369, 540 S.E.2d at 860.  That concern is "the prosecutor's opinion carries with it the imprimatur of the

---

conduct is now classified as criminal sexual conduct with a minor in the third degree.  S.C. Code Ann. § 16-3-655(C) (2015).

Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *Id.* (quoting *Walker*, 155 F.3d at 184).

As we did in *Reyes* and *Kelly*, we emphasize here that prosecutors must be careful how they use the first person in all phases of trial. We stress prosecutors must be cautious *how* they use the first person because we recognize that as a practical matter it is impossible for a lawyer to eliminate the first person from their courtroom advocacy. For example, a prosecutor would be completely within her proper role to tell a jury in opening statement, "I want to introduce myself to you," or "It is my role in opening statement to outline for you the evidence the State will present," and "At the conclusion of this trial, I am going to stand before you again and I will ask you to convict this defendant of this crime." Similarly, a prosecutor on direct examination of a witness may say, "I now want to direct you to the events that occurred just before you witnessed the crime," or on cross-examination may say, "That is not the question I asked you and I want you to answer my question." In closing argument, the prosecutor is duty-bound to tell the jury what evidence she believes the jury should consider during its deliberations. Statements such as, "I am going to outline for you the evidence I want you to focus on because this is the evidence that demonstrates the defendant's guilt" or "Here is why I think you should find the evidence shows this witness to be credible" are appropriate during closing argument because the prosecutor is staying within her role as an advocate, to convince the jury—based on the evidence before it—the State has proven the defendant guilty beyond a reasonable doubt. In this case, there is nothing wrong with the deputy solicitor having told the jury, "I'm going to repeat what [I think] should be [compelling] to you, was how did she know that."

In each of these uses of the first person, the prosecutor is playing her proper role as an advocate. In *Reyes*, on the other hand, the prosecutor used the first person to step out of her proper role. Telling the witness "when *we're* in here, *we're* going to talk about the truth," 432 S.C. at 400, 853 S.E.2d at 337, created the risk the jury could believe the prosecutor was not there simply to elicit testimony—the proper role of an advocate during direct examination—but had previously verified the truth of the testimony and through that verification was making a representation to the jury that she and the witness "[a]re going to talk about the truth," *see* 432 S.C. at 405, 853 S.E.2d at 340 (concluding "the questions . . . were improper" when "the solicitor used the first-person pronoun 'we' when questioning Minor about telling the truth"). In *Kelly*, the prosecutor stepped out of her role of eliciting testimony by using the first person during her direct examination of the child victim, asking, "What did *I* tell you *that I absolutely required* regarding your testimony to this jury today?" and "Did *I* tell you to tell the truth to this jury?" 343 S.C. at 369 n.12, 540 S.E.2d at 860

n.12. We held in *Kelly* and repeated in *Reyes*, "because the solicitor phrased his questions in the first person, the jury could have perceived the solicitor believed the witness was testifying truthfully—a belief that carried with it the imprimatur of the government, which may have induced the jury to trust the State's judgment about the witness." *Reyes*, 432 S.C. at 404, 853 S.E.2d at 339 (explaining our ruling in *Kelly*).

Finally, we acknowledge that when an attorney uses past tense as though referring to some prior event or proceeding other than testimony before the jury, it could suggest the attorney is aware of something the jury does not know. Busse argues the deputy solicitor's statement "was compelling" indicates the deputy solicitor was aware of a prior determination of the victim's credibility. In the context of the closing argument in this case, however, the deputy solicitor's use of past tense clearly had no such effect. The deputy solicitor began the closing argument by reminding the jury he introduced himself to them during jury qualification, and that he told them he had been sick the last few weeks and was not sure of the extent to which he would be involved in the trial.[2] He then explained he was asked that morning to make the closing argument and he agreed. He stated, "I was not as familiar [with the case] as [the assistant solicitor] was. And so as I sat here this week, I felt like I've kind of been like you guys, learning about this case, hearing from these witnesses, and really just kind of taking it all in." He then recounted much of the testimony and brought up credibility. He asked rhetorically, "Have y'all thought about that while you were listening to the case and testimony?" He said, "I've noticed some things. Just like you, I sat here listening and I took notes." He then repeatedly talked about "what I heard" and what "I didn't hear," referring through appropriate use of the first person to the evidence before the jury. Just before the statement to which Busse objected and which is the subject of this appeal, the deputy solicitor said, "You know, it occurred to me, as I sat here and listened to it, like you guys, . . . ." It was in this context—his recounting for the jury the evidence as he and the jury listened to it—that he said "what was compelling to me." Viewed in the proper context, therefore, the deputy solicitor's use of the past tense in this case was actually to lead the jury to focus on the evidence presented to them, not to improperly harken back to his unique knowledge of some event or proceeding outside their presence.

---

[2] This rather odd exchange is not in our Appendix or the Record on Appeal at the court of appeals. The information we have about the exchange comes from what the deputy solicitor told the jury as he began his closing argument.

In this case, even with the unnecessary use of "to me," we see minimal risk the jury would perceive the deputy solicitor stepped out of his role as an advocate. The point of his statement was to highlight the importance of evidence that the victim knew Busse suffered from erectile dysfunction. The deputy solicitor was correct to stress that if being sexually assaulted was the only way she knew that, the State's case was essentially proven. The deputy solicitor's statement, therefore, was directly tied to evidence admitted at trial. By using the phrase "was compelling to me," the deputy solicitor did no more than tell the jury he believed that this evidence—heard by the jury—was important to the jury's decision. That is not vouching.

### III. Conclusion

Although the deputy solicitor technically should not have used the first person in the way he did, his statement "and what was compelling to me" did not constitute vouching. We find no reversible error.

**AFFIRMED.**

**HEARN, Acting Chief Justice, JAMES, J., and Acting Justices James E. Lockemy and Aphrodite H. Konduros, concur.**